FILED
2010 DEC -2 AM 10: 43
US BANKRUPTCY COURT
EASTERN DISTRICT OF WI

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:                                    Chapter 13

JOSHUA J. HINGISS and
AMY M. HINGISS,                           Case No. 10-29145-jes

    Debtors.

# DECISION

        MMCC Financial Corporation ("MMCC") holds a purchase money security interest in a 2004 Dodge Grand Caravan automobile ("automobile") which had been purchased by Joshua and Amy Hingiss ("debtors") on June 1, 2007. On August 18, 2009, the debtors filed a chapter 13 petition in bankruptcy (Case No. 09-31856) ("first case") which was assigned to Judge Pepper of this district. At the time the first case was filed, the automobile had been purchased less than 910 days before the debtors filed their chapter 13 petition. This is significant because, under the "hanging paragraph" added at the end of 11 U.S.C. § 1325(a)(9) and enacted as part of BAPCPA, the debtors could not apply cram down and bifurcate MMCC's claim into a secured claim and an unsecured claim. MMCC filed its proof of claim in the first case as a fully secured claim in the amount of $12,199.95. The debtors' plan acknowledged that MMCC's claim was incurred within 910 days of the filing of the first case and provided for full payment of MMCC's claim. This plan was confirmed on February 17, 2010. One day after plan confirmation, the chapter 13 trustee filed an affidavit of default in payments, and on February 26, 2010, the first case was dismissed. During the pendency of the first case, MMCC received $275.52 from the chapter 13 trustee.

        After the first case was dismissed, MMCC did not receive any direct payments from

the debtors. On May 24, 2010, MMCC obtained a state court judgment of replevin.

On May 28, 2010 – four days after MMCC obtained its judgment of replevin – the debtors filed this chapter 13 petition ("second case") as Case No. 10-29145, which was assigned to this court. The debtors also filed a motion to extend the automatic stay, which was objected to by MMCC. A hearing was held on the debtors' motion to extend the automatic stay. The court overruled MMCC's objection, finding that the second case was filed in good faith. However, although the court found the second case had been filed in good faith, it reserved to MMCC its right to object to confirmation of the debtors' proposed plan on grounds of lack of good faith.

The plan filed by the debtors on May 28, 2010 in this second case now seeks to utilize cram down because, at the time the second case was filed, more than 910 days had elapsed from the time the automobile was purchased by the debtors. MMCC filed its proof of claim in the second case in the amount of $13,729.02 – more than $1,500 over the amount of its claim filed in the first case. Presumably, this was due to continuing interest charges and other costs. MMCC also objected to confirmation of the debtors' plan in the second case on two grounds: lack of good faith and the doctrine of equitable tolling.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## GOOD FAITH

MMCC submits that the debtors' proposed plan in this second case was not filed in good faith under § 1325(a)(3) of the Bankruptcy Code. There is no bright line rule for determining good faith. Good faith is not defined in the Bankruptcy Code or in its legislative history. In the final analysis, this court must make a common sense judicial determination based upon the totality of the circumstances on a case-by-case basis. See In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992), In re

Case 10-29145-svk    Doc 35    Filed 12/02/10    Page 2 of 7

Smith, 848 F.2d 813, 817 (7th Cir. 1988), and In re Schaitz, 913 F.2d 452, 453 (7th Cir. 1990). In In re Ristic, 142 B.R. 856 (Bankr. E.D. Wis. 1992), this court observed that a good faith analysis in filing a chapter 13 petition and a good faith analysis in filing a chapter 13 plan are not necessarily the same. As such, a good faith analysis for filing a chapter 13 petition and a good faith analysis for chapter 13 plan confirmation must be made separately.

   The court fully recognizes that there are circumstances suggesting that the debtors may have engineered an intentional dismissal of the first case by failing to make plan payments in order to enable them to re-file and take advantage of the cram down provision. At the June 22, 2010 hearing on the debtors' motion to continue the stay in the second case, the debtors vehemently denied they had any such intent and testified that the reason the second case was filed was due to a substantial change in their financial circumstances. The testimony presented revealed that, in the first case, the debtor-Joshua Hingiss was only employed on a seasonal basis but, by the time the second case was filed, he was working full-time. That led this court to conclude that the second case was filed in good faith.

   Based upon the record of this case, this court concludes that there is no clear cut proof establishing that the chapter 13 plan filed in the second case was part of a scheme perpetrated by the debtors. All that was shown was mere speculation. That alone is not sufficient to enable this court to deny plan confirmation based on bad faith. See In re Walker, 2008 WL 2559420 (Bankr. M.D. N.C. 2008) and In re Robinson, 2008 WL 2095349 (Bkrtcy. D. Kan. 2008) (waiting until after passage of the 910-period does not show lack of good faith). This court rejects MMCC's argument based on lack of good faith.

## EQUITABLE TOLLING

MMCC has another arrow in its quiver supporting its objection to plan confirmation. It contends that the doctrine of equitable tolling should be applied. Equitable tolling extends the statute of limitations period where it is equitable to do so on a case-by-case basis. In re Camus, 386 B.R. 396 (Bankr. D. Conn. 2008).

MMCC relies upon the U. S. Supreme Court decision in Young v. U.S., 535 U.S. 43 (2002), to support its contention that equitable tolling should be invoked in order to avoid unfair treatment. Young did not involve a 910 car or confirmation of a chapter 13 plan. Instead, it involved a claim for unpaid federal income taxes in a chapter 7 case. In Young, the debtors filed a chapter 13 petition on May 1, 1996. On March 12, 1997 – one day before the bankruptcy court dismissed the debtors' chapter 13 petition – the debtors filed a chapter 7 petition. The debtors in Young contended that the filing of their chapter 7 petition resulted in their obligation for unpaid income taxes falling outside of the 3-year look-back period and, as a result, their income tax obligations were no longer nondischargeable under § 523(a)(1)(A) of the Bankruptcy Code and also the claim of IRS was no longer entitled to priority treatment under 11 U.S.C. § 507(a)(8)(A)(i). The IRS opposed the debtors' position, submitting that, in the chapter 7 case, the income tax debt remained nondischargeable and that the IRS was entitled to priority treatment. The U.S. Supreme Court agreed with the IRS and applied the doctrine of equitable tolling, resulting in the income tax debt being nondischargeable and entitling it to priority claim status in the chapter 7 case.

The debtors in the case at bar argue that the facts and circumstances in Young are distinguishable. The debtors note that Young was a chapter 7 case, unlike the case at bar which is a chapter 13 case. Furthermore, the claim in Young was a tax claim, not a 910 car claim. The debtors

-4-

assert, in view of these distinguishing factors, that <u>Young</u> has no application and that they can invoke cram down in this second case.

If the equitable tolling doctrine is not invoked, the time period between the date the debtors purchased their automobile and the date the second case was filed totals 1,092 days, and the debtors would then be able to apply cram down. Using cram down, the debtors' proposed plan, if confirmed, would result in MMCC receiving payment only to the extent of the fair market value of debtors' automobile as of the date of filing the second case with no further payment on its unsecured claim because the debtors' plan provides zero percent payment to unsecured creditors.

On the other hand, if the equitable tolling doctrine is applied, the total time period (after excluding that time during which the first case was pending) totals 900 days, the debtors would not be able to utilize cram down, and MMCC would receive full payment on its claim.

This court concludes that <u>Young</u> is controlling and that the doctrine of equitable tolling should be invoked in this second case. In <u>Young</u>, Justice Scalia stated:

> Tolling is appropriate regardless of whether petitioners' filed their chapter 13 petition in good faith or solely to run down the look-back period. In either case, the IRS was disabled from protecting its claim.

535 U.S. at 44. Justice Scalia further stated:

> It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitation periods in light of this background principle. That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity. (internal citations and quotation marks are omitted)

535 U.S. at 49-50.

In Clark v. City of Braidwood, 318 F.3d 764, 767 (7th Cir. 2003), Judge Flaum stated that: "Equitable tolling does not assume any blameworthy conduct by the defendant (as opposed to equitable estoppel, which does)." See also Gaberov v. Mukasey, 516 F.3d 590, 596, which states that "unlike equitable estoppel, the opposing party's conduct need not rise to the level of 'affirmative misconduct' for an equitable tolling theory to prevail."

This court is cognizant of authority which supports the debtors' position, consisting of In re Maas, 416 B.R. 767 (Bankr. D. Kan. 2009) and In re Murphy, 375 B.R. 919 (Bankr. M.D. Ga. 2007). In Maas, the court held that the 910 car claim provision is not a statute of limitations and is not subject to equitable tolling. Maas stated that the debtor's filing of a second chapter 13 case did not give the debtor an unfair advantage and did not deprive the creditor of a right it would otherwise possess. Murphy, at fn. 4, also concluded that the 910 car claim period "is not a period during which the creditor must take steps to protect its rights. Instead, it is simply a formula for determining whether a claim will be subject to § 506 of the Bankruptcy Code."

This court disagrees with Maas and Murphy. It believes that the U. S. Supreme Court case of Young clearly held that a look-back period is a statute of limitations and is subject to equitable tolling and declared:

> The look-back period is a limitations period because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced.

535 U.S. at 47. Even though the case at bar does not involve nondischargeability or priority, it involves a look-back period, and a creditor, like in Young, would be disabled from protecting its interest unless equitable tolling is applied.

Based upon the facts in the case at bar, the court concludes that the doctrine of equitable tolling should be applied and that MMCC's claim be treated as a 910 car claim.

## CONCLUSION

MMCC's objection to confirmation of debtors' proposed plan is **SUSTAINED**, without prejudice to the right of the debtors to file another plan which treats MMCC's claim as a 910 car claim to be fully paid.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, and the court shall enter a separate order.

Dated at Milwaukee, Wisconsin, this 2nd day of December, 2010.

BY THE COURT:

JAMES E. SHAPIRO
U. S. BANKRUPTCY JUDGE

-7-

Case 10-29145-svk    Doc 35    Filed 12/02/10    Page 7 of 7